S. D. REDMOND, APPELLANT, v. THE REPUBLIC STEEL CORPORATION OF NEW JERSEY, A CORPORATION, RESPONDENT.—186 S. W. (2d) 51.

St. Louis Court of Appeals. Opinion filed March 6, 1945.

*Henry D. Espy* for appellant.

*Fordyce, White, Mayne, Williams & Hartman* for respondent.

BENNICK, C.—This is a suit in equity in the Circuit Court of the City of St. Louis by which the plaintiff seeks a decree of court compelling the defendant corporation to deliver to him certain bonds and shares of its own stock, with earned interest and dividends thereon, in lieu of stock he had owned in a corporation absorbed by defendant corporation, or, in the alternative, awarding him the sum of $3000 as damages for the alleged unlawful and wrongful conversion and appropriation of his property without due compensation.

The plaintiff is one S. D. Redmond, while the defendant is The Republic Steel Corporation of New Jersey, a corporation organized and existing under and by virtue of the laws of New Jersey.

The facts of the case, as charged in the petition, show that plaintiff, at the inception of this controversy, was the owner of 100 shares of the common stock of The Newton Steel Company, an Ohio corporation engaged in the manufacture and sale of steel and steel products in the State of Ohio and elsewhere.

On June 30, 1932, without plaintiff's knowledge, and without notice being given him, and with the alleged intent of concealing the transaction from him, The Newton Steel Company, through its officers and directors and the holders of more than 67% of its stock, conceived a plan and entered into an agreement to merge and consolidate said corporation with, and transfer all of its assets to, The Corrigan, McKinney Steel Company, likewise an Ohio corporation, and likewise engaged in the manufacture and sale of steel and steel products in the same immediate territory as that which was served by The Newton Steel Company.

By the agreement in question, or plan of affiliation as it was called, The Corrigan, McKinney Steel Company purported to offer to such of the stockholders of The Newton Steel Company as might desire to accept its offer, certain shares or proportionate shares of its own stock in exchange for the shares of stock of The Newton Steel Company. However, such purported offer was not conveyed to plaintiff, nor did he know anything of it until 1942. It was provided by the agreement or plan that the stock certificates of those stockholders desiring to accept the offer should be deposited with a designated bank in Cleveland, Ohio, by a fixed date in 1932, and that the plan should not become operative unless certificates in the amount of at least 67% of the outstanding stock of The Newton Steel Company should be so deposited. By the date fixed in the agreement the requisite number of shares had been deposited, whereupon The Corrigan, McKinney Steel Company became the owner of the same, and proceeded to exchange its own shares of stock therefor, though at a rate of exchange which plaintiff claims was unfair to the stockholders of The Newton

Steel Company, inasmuch as the stock of the latter company was allegedly equal in value to that of The Corrigan, McKinney Steel Company, so that the exchange should have been made on an equal basis of share and share alike.

Prior to the effective date of the affiliation agreement, and in furtherance of the alleged conspiracy to consummate a pretended sale and liquidation of the assets of The Newton Steel Company, the directors of such company adopted a resolution attempting to authorize the pledging of its bonds with The Corrigan, McKinney Steel Company as security for the existing indebtedness of the former to the latter in twice the amount of the existing indebtedness, and subsequently entered into a finance agreement that the company's future indebtedness should likewise be secured by such pledged bonds. A majority of the board of directors of The Newton Steel Company resigned, and persons who were directors of The Corrigan, McKinney Steel Company were elected in their stead, thus effectually surrendering the control of the assets, business, and property of The Newton Steel Company to The Corrigan, McKinney Steel Company.

All such facts were fraudulently concealed from plaintiff; and in further pursuance of the conspiracy, The Corrigan, McKinney Steel Company, and the directors, officers, and assenting stockholders of The Newton Steel Company, conspired to cause pretended loans and credits to be extended to the latter so as to make it appear that financial assistance was being given to maintain The Newton Steel Company, when in truth and in fact the purpose was to create a form of mortgage secured bonds under which a form of foreclosure could be instituted, the result of which would tend to indicate that the assets then apparently belonging to The Newton Steel Company were lawfully disposed of upon its failure to discharge its obligations apparently existing, although all money and property belonging to The Newton Steel Company was actually in the hands of The Corrigan, McKinney Steel Company.

Beyond the above, The Newton Steel Company was loaded with excessive charges for materials furnished by The Corrigan, McKinney Steel Company; false loans were granted at excessive rates of interest; excessive provisions were made for depreciation; new equipment was charged as expense to The Newton Steel Company, although such company had in fact become a part of The Corrigan, McKinney Steel Company—all with the intent that The Newton Steel Company should finally become and appear insolvent upon the assumption that it was an independent, existing corporation, so that it would be futile for plaintiff or other similarly situated stockholders to resort to the courts for relief upon discovery that there had been such a pretended sale, merger, and consolidation.

On August 27, 1934, The Corrigan, McKinney Steel Company, after it had acquired all of the assets of The Newton Steel Company by

virtue of what amounted to the merger and consolidation above described, entered into a similar agreement of merger and consolidation with defendant, The Republic Steel Corporation of New Jersey, which also was engaged in the manufacture and sale of steel and steel products in the state of Ohio and elsewhere. Provision was made in such agreement for the exchange of certain of defendant's bonds and shares of stock for the shares of stock of The Corrigan, McKinney Steel Company, with the further provision that the bonds thus exchanged, aggregating some $15,000,000, should constitute a first lien upon the plants and other properties taken over from the latter company. Plaintiff, however, received no part of said securities, nor any other compensation, for his shares of stock in The Newton Steel Company.

Subsequent to the consummation of such agreement, substantially the same sales organization was maintained for both defendant and The Newton Steel Company, and the latter's principal customers were diverted to defendant, all with the view of eventually causing The Newton Steel Company to appear and become insolvent upon the assumption that it was still an independent, existing corporation. As a further part of such agreement, The Newton Steel Company issued bonds in the amount of $4,000,000 secured by a mortgage upon its physical assets, with the bonds being purchasel by defendant, which thereafter instituted two foreclosure suits, as the result of which, in 1937, it became the purchaser at judicial sales of all the properties, plants, and equipment of The Newton Steel Company.

Plaintiff's theory of his cause of action, as set forth in the petition, is, in short, that the entire agreement, as participated in by the three corporations, was fraudulent from its inception, and was designed to make it appear that The Newton Steel Company had become insolvent, all to the end of bringing about the confiscation of plaintiff's property and interest in The Newton Steel Company under color of legality so as to deprive him and other stockholders similarly situated of any remedy at law. It is his further theory that his rights were not extinguished by such transaction; that the assets of The Newton Steel Company are now an integral part of defendant corporation, which holds such assets for the benefit of himself and other stockholders similarly situated; and that inasmuch as the shares of stock of The Newton Steel Company were equal in value to those of The Corrigan, McKinney Steel Company, he is entitled to receive shares of stock and bonds of defendant corporation at the same rate of exchange as was accorded the assenting stockholders of The Corrigan, McKinney Steel Company.

The specific prayer of the petition is that defendant be ordered to deliver to plaintiff certain shares of stock and bonds, with accrued dividends and interest thereon, to compensate him for his shares of stock in The Newton Steel Company which were allegedly converted and appropriated by defendant, or, in the alternative, that he be

awarded damages in the sum of $3,000. Them follows a general prayer that if it should be determined that he has not asked for the proper specific relief, he may be given such other and further relief, both general and specific, as may be in keeping with equity and justice in the premises.

The case was assigned to Division No. 3 of the court, which, along with Division No. 2, is set apart and specially designated for the trial and disposition of equitable proceedings.

Following the institution of the suit, defendant in due time filed a plea to the jurisdiction coupled with an answer to the merits.

As the basis of its plea to the jurisdiction, defendant set up that at the time of the institution of the present suit, there was pending in the United States District Court for the Northern District of Ohio a suit styled The Mitchell Investment Company v. The Republic Steel Corporation of New Jersey (the defendant herein), which suit involved the same subject-matter and alleged cause of action in respect thereto, and prayed the same relief, as does the suit at bar; that the federal court suit had been brought by a corporate stockholder of The Newton Steel Company, which sued in its own behalf and in behalf of other stockholders similarly situated; that both suits related to and dealt with the same identical property; that the federal court suit asked that the defendant, The Republic Steel Corporation of New Jersey, be declared a trustee as to all of the assets of The Newton Steel Company which came into the hands of The Corrigan, McKinney Steel Company, and thence into the hands of the defendant, and that such assets be impounded by the federal court, and be impressed with a lien, and be sold and the proceeds distributed pro rata among the stockholders of The Newton Steel Company; that the petition in the instant case sets out the exact factual situation depicted in the federal court suit, so that whatever relief might be accorded the plaintiff in the latter case would likewise accrue to plaintiff in the case at bar; and that inasmuch as the federal court suit is one *in rem*, and inasmuch as the *res* is located within the territorial jurisdiction of such federal court, that court, having first acquired and assumed jurisdiction of such cause of action and of the property and *res* involved therein, retains exclusive jurisdiction thereof to the end of the litigation, so that while such suit is pending, no other court, either Federal or State, has any jurisdiction, in view of the rules of comity, to impair or defeat the jurisdiction of the Ohio Federal Court by undertaking to make any order relating to the disposition of the *res* over which said court has acquired and is exercising jurisdiction.

For its answer to the merits, defendant set up two theories of defense, the first, that plaintiff had been guilty of laches, and that his suit was barred by the Statute of Limitations; and the second, a plea of *res adjudicata* so far as the question of the court's jurisdiction was concerned.

The basis of the latter plea was that plaintiff had brought a prior suit against defendant allegedly involving the identical subject-matter and relief; that defendant had filed a plea to the jurisdiction in such suit upon the ground of the pendency of the suit in the Ohio Federal Court; that Division No. 2 of the court, to which the prior suit had been assigned, had sustained the plea to the jurisdiction, and had ordered that plaintiff's suit be dismissed; that the term had ended without an appeal being taken, so that the judgment dismissing the cause of action had become final; and that such judgment was therefore conclusive upon the question of plaintiff's right to bring and maintain the present suit.

For his reply, dealing first with the plea to the jurisdiction, plaintiff alleged that whereas the suit in the Ohio Federal Court was one *in rem,* the instant suit was *in personam,* and therefore subject to be prosecuted in the local court upon the theory that the enforcement of the alleged personal liability involved in the instant suit would not impair or defeat the jurisdiction of the Ohio Federal Court over the *res* which had been brought under its control.

As for the merits of the case, plaintiff denied that he had been guilty of laches, or that his suit was barred by the Statute of Limitations; and further denied that the allegations in the case at bar were the same as those of his prior suit so that the judgment of Division No. 2 in the prior suit would be *res adjudicata* in the instant suit.

Upon the submission of the plea to the jurisdiction, the court sustained the same, and caused final judgment to be entered dismissing plaintiff's cause of action. Plaintiff thereupon applied for and was granted an appeal to this court.

The question in dispute between the parties is whether the court was right in sustaining the plea to the jurisdiction and in directing the dismissal of plaintiff's petition.

Strictly speaking, the court did not rule the plea to the jurisdiction upon the basis of *res adjudicata,* that is, that the prior decision in Division No. 2 was final and conclusive upon the question of plaintiff's right to bring and maintain the present suit, but instead sustained the plea upon the theory that there were not sufficient material differences in the allegations of the petitions in the respective suits to warrant the court in reaching a decision contrary to the decision reached in Division No. 2. In other words, the court treated the prior decision in Division No. 2 as persuasive rather than conclusive, though it is significant that in rendering a decision in conformity with that of Division No. 2, the court effectually held that so far as the material allegations of the two petitions were concerned, plaintiff's cause of action was identical in both suits. It would seem, therefore, that the important thing on this appeal is to determine the question of whether the cause of action embraced in the instant case is in fact the same as that involved in the prior suit, since if the cause of action is the same

in both instances, the decision rendered in Division No. 2 is necessarily conclusive upon the question of plaintiff's right to bring and maintain the present suit, and this without regard to any question of the merits of the decision in Division No. 2. Once Division No. 2 sustained the plea to the jurisdiction and dismissed the cause of action, the question of plaintiff's right to bring and maintain the suit was finally adjudicated; and with that decision unappealed from, it is conclusive upon plaintiff in the present suit, if his cause of action is still the same. [Baisley v. Baisley, 113 Mo. 544, 21 S. W. 29.]

A comparison of the petitions in the two suits shows that for the most part they are identical, and that the petition filed in the present suit is largely a copy of the petition filed in the prior suit. In fact, the only difference worthy of note is the exclusion from the petition filed in the present suit of a paragraph contained in the first petition, which charged that all of the assets of The Newton Steel Company which came into the hands of The Corrigan, McKinney Steel Company, along with all of the latter's own assets, were impressed with a trust and were subject to a lien to secure payment to plaintiff of his *pro rata* share of the converted assets as representing his stockholding in The Newton Steel Company at the time of the alleged conversion.

Undoubtedly this paragraph was omitted by plaintiff in the hope of avoiding the effect of the decision in Division No. 2, which had been predicated upon a finding that the suit assigned to it was one *in rem,* and therefore not subject to be maintained in the local court in view of the pendency of the suit in the Ohio Federal Court, which was admittedly one *in rem.* However, despite the omission of this particular paragraph, as well as the slight change in the language of certain other paragraphs, the cause of action embraced in the present suit was still the same as that involved in the prior suit. The stating part of both petitions alleged the identical factual situation giving rise to the cause of action, and the prayer for relief was substantially the same in both instances. In either case, plaintiff was seeking to follow the assets of The Newton Steel Company through the hands of The Corrigan, McKinney Steel Company and into the hands of defendant, and to have his own interest in such assets determined and adjudicated to the end that defendant might be compelled to compensate him for his stock upon the same basis of exchange as that which had been afforded the assenting stockholders of The Corrigan, McKinney Steel Company.

With this the nature of plaintiff's cause of action, Division No. 2 concluded that the prior suit was one *in rem,* or more properly one *quasi in rem* in the sense that while it was a proceeding between the parties themselves, its object and purpose was to reach and affect specific property in defendant's hands in which plaintiff claimed to have an interest. If the court was right in thus characterizing the suit, it was necessarily right in sustaining the plea to the jurisdiction,

since in the case of suits *in rem*, the court which first acquires jurisdiction over the *res* does so to the exclusion of the right of any other court of concurrent jurisdiction to interfere with its control and disposition of the same. [In re Franz' Estate, 346 Mo. 1149, 145 S. W. (2d) 400.] But as we have already pointed out, the precise question before us is not whether Division No. 2 was right in its conclusion, but whether its judgment was in any event a final adjudication of the issue arising between the same parties upon the plea to the jurisdiction in the case at bar. Since the cause of action was the same in both suits, the decision of Division No. 2 was conclusive upon the question of plaintiff's right to bring and maintain the present suit; and the court therefore ruled properly in the instant case in sustaining the plea to the jurisdiction and in dismissing the petition.

It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.*, and *McCullen* and *Anderson, JJ.*, concur.